We'll hear argument next in Case No. 10-1261, Credit Suisse Securities v. Simmonds. Mr. Landau, you may proceed. Justice Scalia, and may it please the Court, in Section 16b of the 1934 Exchange Act, Congress created a cause of action to allow securities issuers to recover short-swing profits from two years after the date the short-swing profit was realized. The statute doesn't say, two years after the date the defendants filed a Section 16a report, as the Ninth Circuit and Respondents would like to have it, nor does the statute say, two years after the date the plaintiff discovers the short-swing transaction, as the government would like to rewrite it. I'd like to make two basic points here today. First, as this Court recognized in LAMP, the two-year time limit in Section 16b is best read as a period of repose that can't be extended at all. And second, even if Section 16b's two-year time limit could be extended, the doctrine of equitable tolling wouldn't apply to extend the time limit here, where the plaintiff didn't act diligently to bring a claim and didn't prove that any extraordinary circumstances precluded her from filing. The upshot of these two points is that this Court should reverse the Ninth Circuit's decision and remand the case with directions to dismiss the complaint as untimely. Ginsburg. On your first point, you cite LAMP, but LAMP had two limits. So it said, what was it, one year from whatever, from discovery, and then it said an outer limit at 3 years, and it was the same thing in Merck. Here we just say it just has what seems to me a plain, vanilla statute of limitations that is traditionally subject to waiver, equitable tolling. You don't have that special kind of statute that gives you one limit and then sets a further limit that will be the outer limit. With respect, it's certainly true that a two-prong time limit underscores that the outer prong is a period of repose. But there are certainly no magic words that Congress has to use that doesn't have to use a two-prong time limit to establish the outer limit as a period of repose. In fact, that's really the lesson of this Court's decision in TRW and in Beggerle and Brockamp, that the background or the default rule, the background rule that equitable tolling applies, isn't some kind of — is just that. It's a background rule.  Kagan, if you don't have the two-prong structure, which really did, as Justice Ginsburg said, drive the analysis when we — when we talked about those provisions, so that's not there. So what takes you out of the default position, which is equitable tolling applies under the statute of limitations? Sure, Your Honor. I think the key point, Your Honor, is that this Congress in the 1934 Exchange Act was carefully attuned to the issue of time limits. Congress — there was a lot of discussion of this. This is not a situation where Congress established a liability and just didn't focus on this issue, as often happens, and left it to background statute of limitations provisions or other background rules. Congress thought long and hard about this. With respect to the two-prong provisions, those are the fraud provisions that were set at an outer limit of 3 years, and then they actually created a discovery rule that said, we don't even want people to wait the whole 3 years. If they've discovered the facts underlying their claim, we want them to bring it within a year. So they used discovery to shorten the time, not to extend it. Right. But I guess I'm still not understanding why, if you look at this provision, you would think of this as anything other than an ordinary statute of limitations. What is it about this provision? I don't mean to — I mean, you can make structural arguments, but, you know, what factors do you think in this provision makes it a statute of repose? Two things, Your Honor. First, I'd like to just finish on the structural point, and then we also have a textual argument. With respect to the structure, this, let's not forget, was enacted at the same time and as part of the same statute as these other provisions that did use discovery provisions to shorten the time limit. What Congress did with respect to 16b, instead of having the 3-year outer limit plus a safety valve that would make you have to sue even sooner, Congress just brought in the outer limit, instead of 3 years as in the two-prong provisions, said you've got to sue within 2 years. Having said you've got to sue within 2 years, they decided you didn't need that safety valve provision. But it would be fairer to say that this statute of limitations is a statute of repose. Ginsburg. The problem is it reads like dozens of statute of limitations, says no suit, more than 2 years, and I think that the general understanding is that that limitation, that kind of limitation, there is a presumption that it is subject to equitable thresholding, forfeiture, waiver, and why is this one doesn't use any different words. Why is it? Clements. This legislation, again, this section 16 is not a stand-alone statute. It was enacted as part of the 34 Act, and so I think you see the same Congress that set a hard outer limit of repose for fraud claims in section 9e and 18c wouldn't have wanted with respect to this prophylactic provision that is, by definition, both under and over-inclusive. It may be catched in the work that it is. Kagan. Well, I could turn the argument around on you. Congress surely knew how to write a statute of repose because it did it in this statute, but it didn't do it with respect to these kinds of violations. This statute of limitations, I'm going to call it, reads very differently from the two-pronged provisions that we've interpreted in the past. Again, Your Honor, I think one point, just to respond to that and as well to Justice Ginsburg's question, the typical textual hook for a statute of repose is that it's keyed off of the defendant's conduct two years after the defendant does X, Y, or Z. That is, as we quoted Black's Law Dictionary for this proposition in our brief. The Seventh Circuit, Justice Posner had an opinion just last week underscoring this point, the Hy-Vee case, that said the typical statute of limitations actually says two years after the cause of action accrued or after the plaintiff discovered. But when you're going to – again, we don't think – in this case, we're not relying solely on the textual thing, but in terms of numbers of guideposts, this is not your classic statute of limitation. If you actually start looking at them, a lot of them are keyed off of accrual. Alito, is that true? If we were to look at all of the statutes of limitations in the U.S. Code, we would find that they are generally or exclusively drafted like Section 1658, the general statute of limitations provisions, and are geared to – are triggered by the accrual of the action rather than some event? Your Honor, I think we can't say that there is a bright-line rule. Congress – again, I think the most we can say is that the classic formulation of a statute of repose is to key a time limit off of the defendant's conduct as opposed to the accrual. Sotomayor Well, the problem is that the injury here is the defendant's conduct. Meaning, if the nature of the claim, as is here, that someone has received the profit they're not entitled to, then the injury is the same. The profit belonged to the shareholders of the corporation, not to the insider. So, textually, the nature of the claim here is the very injury, plaintiff's injury. Well, Your Honor, again, one of the things about this statute that's kind of odd, it's a prophylactic statute that doesn't even require any injury. I mean, it just says there's got to be disgorgement to the corporation. It's a little bit different. Sotomayor Well, disgorgement is injury, meaning that it's something that you're taking away from someone else. But it's taking it away from the defendant. It doesn't actually mean that actually somebody else would have earned that money. Sotomayor Tell me what logic there is in reading this as a statute of repose, other than your argument about finality and its importance. I think if we take your adversary's position, that this statute of limitations was geared under an understanding that an insider would, in fact, make the requirements, would file the statements required by 16a, then it makes absolute sense to think of it as a statute of repose. But if Congress understood that some wouldn't do the statutory requirement and file in a timely manner, why wouldn't equitable tolling be a more appropriate way to look at this? I think the key point, Your Honor, is to look at the 1934 Exchange Act as a whole, which includes not only this provision, but also out-and-out fraud provisions that are for intentional, real, hardcore insider trading. That would be sections 9e and 18c. There is no question that Congress provided a period of repose for those, the outer limit. And then that raises the question that Justice Ginsburg started with, which is, do you have to have a two-prong limit? And the answer to that is, no, you don't. There's no magic words, as TRW, Begerle, and Brockham show us. You just have to try to make sense of the statute as a whole. And Congress would not have wanted to give repose to intentional fraudsters, but not give repose to a defendant in a purely prophylactic section 16b action. I think that's the fundamental thing. We have to step back and look at this. Ginsburg. It's not simply prophylactic. I mean, there's an objective that 16a expresses. That is, Congress wanted these trades to be reported, to have the form file, form for file. So it's a disclosure-forcing provision, 16a is. Then why would Congress mean for it to operate to immunize a defendant who has not made that filing and who has concealed what was supposed to be reported in the 16 under 16a? Your Honor, for the same reason that Congress would have afforded repose even to out-and-out fraudsters. Again, Congress was creating vast new liability here. A fraudster, by definition, somebody who would be liable under 18c or 9e, has done conduct to conceal it. Yet Congress still believed, because it was creating this vast new liability. Judge Posner, Mr. Lando, has a theory for why it is that fraud is treated differently from these 16b offenses, and it's that it's much more important to prevent strategic behavior involving timing in fraud suits. The stock price goes up, the stock price goes down. Whereas in these suits, damages are fixed. It doesn't really matter where you bring them, so it's not nearly as important to set a clear limit. Well, like many of Judge Posner's theories, it's a very clever theory, but in a sense it misses the fundamental truth that when Congress is granting repose, it is trying to allow people to turn the page on something in their past. The idea that Congress would grant repose to more culpable people, but not to less culpable people. Well, you have one theory which deals with culpability, and he has another theory which deals with strategic behavior. And I don't know how to pick between those two theories, to tell you the truth. The text doesn't suggest which one Congress was thinking about, and that puts me back. And let's look at this provision, and this provision looks like an ordinary vanilla statute of limitations. Well, again, the only thing I'll say on repose before that, and I'd like to turn to that, because we certainly don't need repose to win this case, and while we think it's best characterized, this Court in Lamp had occasion to look at all of the various time limits and see how they all work together. And this Court characterized Section 16b as a statute of repose. To be sure, that was dicta, because Lamp itself was not a 16b case. But it was a statement or it was a recognition that came after looking at all of these, and it would be strange now to say that, in fact, the 16b time period is potentially the Court said it was more restrictive, and both the majority and Justice Kennedy in dissent agreed that it was a statute of repose. Scalia. Of course, Lamp was a disaster, wasn't it? Congress had to try to patch up what we had done. Absolutely not, Your Honor. Lamp stands as a landmark. But let me make clear, Your Honor, our position here today doesn't depend on this  Turn away from the statute of repose. Could I just ask you one more question on that? Absolutely. If 16a reports are not filed, how likely is it that a potential 16b plaintiff will find out within the 2-year period that there were these trades? Your Honor, they can find out in many ways the same ways that any other securities plaintiff, including a fraud securities plaintiff, can find out. There are corporate books and records that can be examined. There are other SEC filings and SEC investigations. There's other litigation. This would come up in an estate discovery or a state or divorce proceedings. There are whistleblowers, confidential informers, brokers, counterparties. Again, if Congress had wanted the section 16a disclosure to be the trigger under section 16b, it could have done so. And, in fact, as we noted in our brief, there was an early draft in the House that was drafted and established for, you know, it's an outer limit of 3 years and an inner limit of 6 months after the 16a disclosure. And what are the other filings that might disclose this? Well, Your Honor, again, like, this case is a good example. In this very case, the contradiction at the heart of the plaintiff's case is that they say, well, it can't possibly be discovered without a 16a filing. There was no section 16a filing.  Sotomayor's Is there a public document that a shareholder can look at to see whether an insider has traded within 6 months? Well, Your Honor, there is not a form 4, which is a public document, but not every securities filing requires a public document. I didn't ask that. I'm going back to Justice Alito's question, which is, how easy is it to find out without the 16a? Again, there may be SEC filings. There are other. That's a big thing. I didn't ask maybe. Well, no, there are SEC filings that companies are required to make. There are – again, this is not a – selling, buying and selling shares is not something that can be done alone in the dark of night. You need to have other people involved with you. You need to have brokers complicit. It's a large amount of shares. And so what's the likelihood that a broker is going to turn you in? There are whistleblowers. That's the risk. That's a very nice thing, but what – how likely is that? Your Honor, brokers have their own responsibilities. A broker could be held liable as an aider or abetter to a violation. Sotomayor, I wish a broker knew that the – that his principal didn't file a form he was required to. Well, again, the broker may get suspicious if the – a broker may actually be checking. If the CEO of a corporation is suddenly selling all these things, again, this is no different than the way a securities plaintiff in an out-and-out fraud case, and those are brought every day, Your Honor. But again, I think the point here is that regardless of whether this is reposed, even if you say that this can be extended, it certainly can't be extended in the way that the Ninth Circuit extended it. And we in the SEC, the government, agree on this, that the Ninth Circuit adopted this absolute black-letter rule that says it is told unless – it doesn't even start to run unless and until the Section 16a report is filed. How about the Second Circuit rule? The Second Circuit rule is more of a notice approach that says that it – but again, Your Honor, the problem with the Second Circuit's approach is that it doesn't reflect traditional background norms of equitable tolling. Then if you say it's not a statute of repose, then what do you do to figure out what Congress would have wanted? You say Congress legislates against the backdrop of these kind of equitable doctrines. So let's look at what equitable tolling consists of. This Court in many cases over the years, it's been dealing with equitable tolling since almost the first days of the Court, well into the 19th century. In the most recent cases, the Court has made clear in the Holland case, for instance, just two terms ago, that equitable tolling traditionally has two minimum requirements. First, there has to be diligence on the part of the plaintiff. And in this context, that means does a reasonable – did the plaintiff know or would a reasonably diligent shareholder have reason to know of the claim? And second, extraordinary circumstances. And so with respect to the Second Circuit's decision in Litzler, Your Honor, that you mentioned, I think it departs from traditional equitable tolling in a couple of ways. Most particularly, it limits it to actual knowledge. It doesn't say no or should have known, which again is the background rule as we in the government agree. The second thing with respect to Litzler, where it departs from the background rule, is it says that it is per se gives rise to equitable tolling not to file the section 16a, and doesn't include any kind of culpability on the defendant's part. And Judge Jacobs in footnote 5 of Litzler dropped a footnote saying that he would prefer to announce a tolling rule that was more consonant with, again, background rules of equitable tolling, that said only when the failure to file the section 16a was unreasonable or intentional, because he would say otherwise you could have a purely technical or inadvertent violation that would give rise potentially to equitable tolling, and he didn't think that was right. Kagan. If we were to agree with you on one or both of those two things, wouldn't the normal course be to remand, and what's your best argument for why we should decide it? Our best argument, Your Honor, is that the district court in this case already decided the very issue here. The district court said it is undisputed just on the pleadings that they knew or should have known. This case is probably the most egregious kind of case that you can see for this proposition, because everything here is a replay of the IPO litigation and even the billing case that came all the way to this Court. This case was filed just a few months after this Court decided billing. And in particular, they have now the Respondents have come and said, well, what we didn't know here was group, and we didn't know that the underwriters were in a conspiracy with the issuer or insiders, and that was the piece of the puzzle that we were missing. We have to accept the plaintiff's allegations as true. You may well be right that they really knew or they should have known, but at this stage, we can't make that judgment because we have to accept the plaintiff's allegations as true. Correct, Your Honor, but you're entitled in deciding that to look at their own pleadings. And there's two important things from their own pleadings. First, if you look at their complaint, it alleges lockup as its theory of group. It says the plaintiffs and the underwriters and the issuer insiders formed a 16A group because they had these lockup agreements. Well, those lockup agreements were publicly known as early as the prospectus of these IPOs. So the lockup agreement was no secret. Second, they say, well, even though, like, lockup might have been out there, we didn't know there was this underpricing-based conspiracy. And even assuming they could try and slice and dice it like that, according to the legal theory, the fact is, in their motion to dismiss in the district court, they cited, this is docket 58 in the district court, pages 1 to 2, they go at length about the academic literature regarding a conspiracy between underwriters and issuer insiders that they say gives legitimacy to their substantive claim. But that includes lots of articles, including a 2004 article. Again, 2005 would be two years before they filed. So they are relying in their opposition to our motion to dismiss on an article on — there's a lengthy footnote that says there's a ton of academic research on this particular theory. So basically, a remand is unnecessary because the pleaded facts by the plaintiff themselves show this is untimely as a matter of law. I would like to reserve the balance of my time, if there's no further questions. Thank you. Justice Scalia, may it please the Court. I'd like to start where Justices Ginsburg and Kagan did, because if you picked up this statute, it would look, for all intents and purposes, like an ordinary statute of limitations. And the question, then, is, how has Congress rebutted that presumption of equitable context or structure? And as I understand it, Petitioners have two basic arguments, both of which are incorrect. The first is textual. They say, well, it runs from the time of the complained of event. But the reason they can't put too much weight on that, Justice Alito, is because if they looked through the statutes in the Court's cases, they would come across cases like Exploration Company or Delaware State College, where the statute ran from the time of the complained of event, and this Court treated it as an ordinary statute of limitations subject to equitable tolling. And they've come across Beggarly, which ran from accrual, and yet the Court said statute of repose not subject to equitable tolling. Alito, if you were drafting a statute of repose, how would you phrase it, other than the way this is phrased? I think normally what Congress does is it says there should be no jurisdiction after a particular time, because it's not trying to differentiate among the application of different equitable background principles. But there are statutes that do that. We would treat that as a statute of limitations. And I assume we'd treat it like a normal statute of limitations subject to tolling. You think whenever we encounter a statute of limitations that is phrased in jurisdictional term, there can be no tolling? I think, Justice Scalia, that where you have statutes that say there shall be no jurisdiction after a particular time, this Court has read them to cut off equitable tolling after that time. But Congress could have written the statute to say the time limit shall not be tolled, and there are statutes like that. Now, most of those statutes say there shall be no tolling except in particular circumstances, because Congress has considered it more finely. But they could make the prohibition absolute. And the second argument that I understand Petitioners to have is basically structural. They say, well, look, they borrowed the language from the outer prong of the two-prong limit. Alito, before you get to that, do you have an example of a classic statute of repose that I could look at to see how they should be phrased, and not one that says there shall be tolling or there shall not be tolling except in some circumstances, one that just says this is the statute, this is it, no tolling whatsoever? You mean other than statutes as in Merck and Lampf where there were tiered structures? Right. Right. A stand-alone provision. I think the statute in Beckerley was an example where the Court said even though it runs from accrual, it incorporates a discovery rule and it sets a 12-year limit. And so textually and contextually — I mean, I don't think there is any classic formulation. I think that's why Petitioners can't point you to anything, because the courts always look to all the indicia of statutory meaning, text, context, and structure. So the same language can create a statute of limitations of repose. So in Lampf and Merck, if those statutes hadn't had a two-tiered structure, just the language of the outer prong as the statute alone, I think the Court would have treated it as a statute of limitations. The Court didn't say in Lampf that language creates a statute of repose full stop. It drew a structural inference by looking at both of the prongs and comparing them to each other. So when Petitioners say, well, but they borrowed the language of the outer limit and we know that's repose, well, we only know it's repose in the two-prong provisions because of their structure, and this provision doesn't have that structure. So I don't think I can point you to any classic formulation, because the same words can be either limitation or repose, depending on what else Congress does in that statute. Scalia. I think you understate the strength of Petitioners' argument in this regard. It seems to me where you say, you know, three years unless the plaintiff knows sooner than that, and then you say two years unless the plaintiff knows earlier than that, and then you say two years, it seems to me that the implication is two years, period. Whether the plaintiff knows earlier, later, doesn't matter. Justice Scalia, I don't know what else to say except that that would overrule Exploration Company and Delaware State College. But we said in Merck. I mean, wasn't Merck just like that? It says a cause of action can be or whatever, may not be brought, may be brought not later than the earlier of, two years after the discovery of the facts, or five years after the violation. I take it that means five years after the violation. Forget about the discovery of the facts. Well, that's right. But the reason that that language created a period of repose was because of the structural inference. I took Justice Scalia's hypothetical to be if the statute just said no suit shall be brought more than X years after the violation. Scalia, what if those three provisions had been, you know, followed each other immediately? You know, three years unless, you know, with a cutoff that would make it shorter. And two years with a cutoff that would make it shorter. And then a third one just says two years. You think there would be no implication that the two years means two years, period? I think the implication would be that in the others, Congress created a period of repose by using very specific language to do that, and in the third it didn't. It wrote it like an ordinary statute of limitations. Now, it could have written it differently, Justice Scalia. It could have said no suit shall be brought after X time, which is the ordinary language of statute of limitations, and that time shall not be told. And Congress has done that in other statutes. Ginsburg's claim, the statute of limitations doesn't terminate the claim. It just says you can't get a remedy if you sue too late. But there are statutes that say you have no claim after X time, and that would certainly be a repose. You have no right anymore after that. No question. That's certainly true. If the Court Maybe you'd better go, Will, go on. I think you'd better go to the other point, because I want to know whether you differ from the Petitioner on the second point. As I understand the Petitioner, he does not think that you reach the same result if, indeed, the violation had been nonintentional. Now, do you take that position as well? No, Justice Scalia. I think that is the one place in everything Mr. Landau said where there is daylight between the Petitioner's position and ours. In the government's view, the traditional equitable rule is the statute is told until the plaintiff has actual or constructive notice of the facts underlying her claim. It doesn't matter whether the concealment of those facts by the defendant that gets violated. Kagan Isn't that right, Mr. Wall? I mean, don't we usually look when we're thinking about equitable doctrines as whether the defendant has clean hands? Whether the defendant is culpable or not seems to matter a good deal when we're thinking about considerations of equity. Absolutely. And I think in many fraud and concealment cases where you are not talking about a duty of disclosure, either common law or statutorily, you do have affirmative misconduct. But it's a different question when Congress has come in and told the defendants by law what they have to do. For the defendant then to breach that statutory duty, I think Congress has already told them what they have to do in this context. But I think Mr. Landau's point, and it was a strong part of his brief, I think, was that there was no reason why his clients would have thought that they had a disclosure obligation in the first place. So it wasn't like they were looking at this disclosure obligation and saying we don't feel like it. They were saying we're not covered by it. That just goes to Justice Ginsburg's point, I think, which is that where a plaintiff can sufficiently plead a section 16b case at the motion-dismiss stage to survive dismissal under Iqbal and Twombly, everyone agrees that if you've got a 16b potential violation, you've got a reporting duty under 16a. You can't have liability for a trade under b that you weren't required to report under a. So if the plaintiff can sufficiently plead a case at the motion-dismiss stage under 16b, by definition the plaintiff has sufficiently pleaded that the defendant violated a reporting obligation. Alito Well, no. Why is that true? Somebody could be an insider without knowing that the person is an insider. Fisher That's right. But section 16a, except for the criminal sanctions, is a strict liability provision. If you're an insider and you fail to file, you violated 16a. Now, you know, it's a separate question on 16b, but I think everyone here agrees that if you have a violation of b, you necessarily have a violation of a. You can't be forced to disgorge the profits from a trade you weren't required to report. Alito No, I understand that, but I thought the point was, I thought the question was whether there is the kind of concealment that would invoke equitable tolling when the concealment is not done knowingly, when it is not done in knowing breach of a disclosure obligation. Fisher I think the breach of a duty, a statutory or a common law duty, especially where that duty is designed to aid in the enforcement of private right of action, is and has been considered by courts to be concealment. Without looking at whether the fiduciary just accidentally or inadvertently did it. Breyer There are two different doctrines, I gather. One is equitable tolling. The other is sometimes called equitable estoppel or fraudulent concealment. But whatever you call them, if you take your position, a person who really thinks he doesn't have to file and so he doesn't file will be liable forever. There will be no statute of limitations because the plaintiff will never find out, maybe 50 years later. All right? If you take the opposite position, then you will prevent plaintiffs in borderline cases from bringing suits because they are not going to find out that somebody thinks it's a borderline case. I see one harm one way, one harm the other way. You are arguing that the second harm is the worst harm. Okay? Why? What's the argument? Fisher Justice Breyer, I just want to fight the premise. Breyer No, I'm making it for you. I'm making your argument. I'm trying to. I'm saying there's something on your side and something on the other side. If he's arguing that you're wrong because if there's no bad conduct by the defendant, he honestly thinks he doesn't have to file, then the statute never runs. Okay? But on the other hand, his position leads to the plaintiff never being able to sue in borderline cases, which is worse. Fisher You're absolutely right. They're both bad. We've occupied the reasonable middle ground. Hope you like it. Breyer Thank you, Mr. Wall. That's a nice note on which to end. Mr. Tilden, we'll hear from you. We'll be sorry. Justice Scalia, and may it please the Court. The underwriter's argument and the government's, for that matter, are founded on the notion that Congress wanted someone who violated 16a to receive the benefit of the statute of limitations or repose in 16b. 16b is unique in the securities law and perhaps in the law generally in that the plaintiff suffers no injury and recovers no damages. There is no triggering event, unlike a fraud case, your sock drops, to suggest that you've been harmed. 16b is 99 percent of the time irrelevant without a 16a filing. As a matter of logic, it makes no sense to provide that one who violates 16b can escape liability because they also violate 16a. Alito Well, what about as a matter of language, whether or not 16b is a statute of repose or a statute of limitations, it tells you exactly when the time is supposed to begin to run from the realization of the profit. And you want to say, no, it doesn't begin to run from that point, it begins to run from the point when some other completely different external event occurs, if it ever does occur, which is the filing of the 16a report. Textually, how do you get to that? We get here, get there this way, Your Honor. The Court several times recognized that 16b and 16a were interrelated. The limitations period in B provides, in the second sentence, such profit and no such suit for such profit. Well, what profit and what suit are those? To answer that question, we must go to the first sentence, which refers to the profit of such beneficial owner, director, and officer. Who are they? To know that, we must go to 16a, which is a single sentence statutory command that directs beneficial owners of more than 10 percent, directors and officers, to file the form provided for below. 16b is a statute of limitations for those who file the form. There is no statute of limitations in 16b for those who do not. The statute of repose contended for by the underwriters here would have this unique feature. It would run invisibly to all but the defendant. No one else has any notice. The clock is ticking but the defendant. This has an attractiveness if you're the defendant, but it doesn't work well for the rest of us. No knowledge of a triggering event and it's running in the face of an affirmative statutory duty. But I think you're arguing against the most extreme position. Another position is just regardless whether there's been a filing, if the person knew or should have known, if a reasonable person would have known, even if there were no filing, that's enough. Your Honor, the — there are several responses to that. 16a, we believe, is the discovery rule. Congress looked at this and commanded insiders to put the information in a particular location so that shareholders who have the primary enforcement authority under 16b can go find it there. In the face of that congressional dictate, can we graft an appendage onto the statute that says notwithstanding the fact the shareholder was told he or she could go look there and notwithstanding the fact they went to look there and there was nothing there, they must nonetheless go elsewhere? Congress said, shareholder, go look behind door number 16 to see if the information is there. Scalia, they need not go elsewhere, but when they have gone elsewhere and have found out, I mean, in this case it's — it was not just that you reasonably should have known, it's you did know. Am I right about that? No, sir, you're not right. Okay. We allege in the claim a conscious agreement between the underwriters and key decision makers at the issuer to underprice the IPO. This is extraordinarily counterintuitive behavior. It is not listed, mentioned at all in the IPO filing in 02. Judge Scheinman's opinion in 03 nowhere refers to group, agreement, contract, conspiracy. Is that necessary to your cause of action? A group plainly is. We — a group is. And to put it out your own — Sotomayor, tell me what was hidden from you in the prior filings in the academic literature that your adversary points to. All of the facts you've just recited have been written about extensively for years and years. So what new information that you receive told you that you should file a lawsuit? Your Honor, I disagree with the premise, but let me work backwards. First, if you — if we were to apply a vanilla form discovery rule like Merck, knowledge of the particular facts of the transaction, to this day no one has knowledge of the purchase and sales within 6 months and the profits. Those are elements of a 16 — sorry, a 16b claim. We lack knowledge. Two, whatever it is a reasonable shareholder ought to do to trigger a Merck-like plain vanilla discovery rule. We have gone far beyond that. We cannot impose on a shareholder the obligation to read the Journal of Financial Management or to follow a Harvard symposium. Three, and this is — You mean to tell me that somebody is investing in the amounts that are invested here and they are not following the fact that this has been the center of securities litigation for years? Your Honor, this is a — not a garden variety 16b violation. I agree with you completely regarding our level of involvement, but I do not believe we present a standard 16b claim. But to answer directly your question, the group allegation that underwriters and key decision-makers of the issuer conspired together is not in the IPO — in the IPO case. The allegation there was this, that the underwriters were getting unrevealed compensation that should have been disclosed — should have been disclosed and was not. Underwriter compensation. And the allegation against the insiders was that they knowingly or recklessly signed the prospectus. It's at page, I believe, 310 of Judge Scheinlein's opinion. So that is all that is alleged there. There is no group activity, no notion that this acted in concert — or that they were acting in concert. The notion that someone would deliberately underpriced their IPO first appeared in the scholarly research. At a spring of 2009 Harvard symposium, a year and a half after we filed our claim. Sotomayor, could you answer what I consider a very strong argument on their side, which is Congress, who creates a statute of repose for intentional conduct like fraud, why would they not create a statute of repose for what is a strict liability statute? The fraud case is all involved, Your Honor, someone who has reason to know that they've been defrauded. It may only be that they bought their stock at X and now it's selling for half of X, but they know something's happened. There is no equivalent here. The 16B plaintiff has suffered no injury. It's critical to an understanding of what the Congress contemplated at the time. One would think if the 16B plaintiff has really suffered no injury, it would be all the more likely that Congress would want a statute of repose. I don't believe, Your Honor, the 1934 legislative history made it clear, makes it clear that Congress was extraordinarily concerned about a broad sweep of misconduct in the 20s. They intended a rule that in this Court's language in Reliance Electric would be flat, sweeping, and arbitrary. They intended to squeeze every penny of profit out of these transactions, and they did so in 16B. This is not a trap for the unwary. Congress has said you cannot be unwary. If you are an insider, you must be wary. You must be wary. That's what Congress has said. If we are concerned about how this might work going forward, and the underwriter has raised a parade of horribles, oh, this is what will happen if the Court adopts our position. One thing we might do if we want to know what will occur in the next 64 or 77 years is look backwards at the last 64 or 77 years. The Whitaker rule has been the rule in most of the United States for virtually the entirety of the last 77 years. Breyer, it's worked out, but I don't understand it. I mean, why not just treat it like a special regular statute of limitations? You say that the profit is made on day one. It was made by an insider. And if your client finds out about it or reasonably should find out about it, then the statute begins to run. Otherwise, it's told, period. It's simple, same as every other statute. What's wrong with that? Well, we don't believe the congressional design contemplated tolling. Congress told shareholders we could go look in a particular place. But here's one other problem with it. But there are people, you see, who don't know. There are always borderline cases. Some people, whether it's this one or not, think maybe they don't have to file. They think they're outside the statute. So they don't. Okay? You're protected. If they don't file and you wouldn't reasonably find out about it, fine. But when you find out about it or should have, not fine. It's very simple and makes everything logical. It seems to be fair to your client, certainly. It may be simple and fair, Your Honor. We don't believe it's what the language of the statute provides for. It also suffers from this additional defect. Under the statute in this Court's opinion, Ingallis v. Mendell, the standing requirement for 16B is that you own shares at the time of institution of the action. This can be years subsequent to the events themselves. Can we adopt a statute of limitation, a discovery rule that runs against someone who has not yet acquired standing under Ingallis? I wonder if we can. It seems to me to defeat the special standing that Congress intended 16B shareholders to have. You acquire standing on day 700 when you purchase your shares only to find that you have no claim because you were having imputed to you something that a shareholder, which you were not, knew or should have known 3 years earlier. Could that be a little bit? Kagan. Mr. Chilton, is there any other context in which we would extend a statute or we have extended or any court has extended a statute of limitations without requiring that the plaintiff be reasonably diligent? Can you point to any other example of that? I cannot, Your Honor, but I can also not point to a statute of limitations such as this one that follows immediately on an affirmative disclosure obligation imposed on the defendant. To answer a question Justice Alito raised in response to one of my colleagues, I believe the best analysis of the difference between a statute of limitations and a statute of repose by this Court recently is in the Beach v. Auckland opinion. And in Beach, the Court analyzed the Truth in Lending Act and concluded the language that said, 3 years after the transaction, the right of rescissions shall cease, was the statute of repose. It was completely clear. It did not rely on a discovery rule incorporated therein. It did not require on a — did not rely on a second prong. Beach cites the prominent Harvard Law Review article at 63, Harvard Law Review, and is a wonderful analysis of this Court's work on this subject. A kernel of the motivation in the underwriter's briefing is the notion that liability under 16b is draconian, that there's — that it's harsh. It's important to note that all you have to do under 16b is give back profit that never belonged to you. In the words of the statute, it inured to the corporation. You weren't entitled to it. It's as if the penalty for bank robbery were that you merely had to give the money back. No attorney's fees. Don't have to return your principal. You just give the money back. Finally, I'd like to address the difference between the Whitaker decision and the Litzler decision, and I'll do that very briefly. Both of these courts found that 16b only worked by virtue of 16a. In Whitaker, the Ninth Circuit said only by full compliance with 16a do your 16b rights mean anything. And in Litzler, the Second Circuit said 16b only works because of the absolute duty of disclosure placed on the defendant. We agree with that. We disagree with my buddy, Mr. Landau. Most trading today occurs electronically in the dark of night. It is invisible to everyone else. But if the Court gets to the position where it is debating whether Whitaker or Litzler ought to be the rule or the SGs, we'd offer this. There is no reported decision in which Whitaker and Litzler will yield different results in our view. Whitaker is a bright-line rule of the kind Congress intended. Litzler is a rule that in its own words requires conceivably discovery and trial. Alitoso, and it requires actual knowledge, is that right? It requires actual knowledge on the part of the plaintiff? Yes, sir. Does that make any sense, given the class of individuals who are plaintiffs in 16b cases, somebody who is found for purposes of litigation very often to imply that the plaintiff purchases a stock long after all of this takes place so the lawyer who wants to bring this suit can just go out and find somebody who knows nothing? Isn't that right? There is much I want to say in response to that. The underwriters contended in the lower courts for a subjective rule. No party before this Court contends for a subjective rule. We do not believe that Whitaker is not a subjective rule. And I do not believe that Judge Jacobson Litzler was arguing for a subjective rule. What he envisioned — the judge had a fair concern in the abstract. He said, look, if they don't file the form, but the identical information is available to all the world everywhere else, what's wrong with that? Well, there's nothing wrong with it except that it's never available to all the world anywhere else. No other securities filings reveal this. Congress told us to go look in one place and not anywhere else. But the Litzler Court, I don't think, envisioned an actual notice rule when it said information as clear as 2 plus 2. I believe it was seeking an objective rule, Whitaker-like, looking for Whitaker-equivalent information. We don't believe such a thing exists. That said, the Litzler rule requires discovery and trial. If the rules don't achieve different results, then we have the choice between applying a rule that is just, speedy, and efficient, Whitaker, and a rule that is just, slow, and costly, Litzler. Some version of Occam's razor, if nothing else, ought to support the application of the Whitaker rule and not the Litzler rule, should the Court find itself in that position. Here's the last thing I'd say, and then I'll be quiet. Today is the first time this Court has analyzed the issue before it. But it's come up repeatedly in the lower courts over the last 77 years, and with one exception, 1954, in the Middle District of Pennsylvania. The courts have unanimously rejected the position contended for by both the underwriters here and the government. The rule has been Whitaker or a Litzler variant of it everywhere, all the time. In 1934, the purchase or sale of a share of stock required the actual knowledge of some other people. Today it is an impersonal, electronic transaction, often at home, in the middle of the night, invisible to everyone. Insider trading was hard enough to uncover then, it's gotten harder now. We do not believe that Congress envisioned any additional burden would be placed on a shareholder by forcing them to learn this undetectable conduct within two years. The most, in our view, famous pronouncement by this Court with respect to the interpretation of 16B is out of the Reliance Electric opinion in 1962. In Reliance, the Court said, faced with a question, two competing interpretations of the statute, the Court should select that interpretation that best serves the Congressional purpose of curbing short-swing speculation by insiders. Scalia. The problem I have with your argument is it's a very strange statute of limitations, excepting that it's not a statute of repose. It says, you know, you have two years after the transaction that was failed to be reported. And you want to say what it means is you have two years from the time it was reported. Congress would have said that. It's so easy to say that. Two years from the reporting. I grant you it could have been said otherwise, Your Honor, but we believe that. But I don't know any other statute of limitations that achieves the result that you want that puts it that way. Every other statute of limitations we can think of, Your Honor, involves a plaintiff who has reason to know of some harm and, incidentally, recovers damages. 16B plaintiff has no reason to know of harm and recovers no damages. Right? If I — let's take a case that's seen every day and every month, probably in every state in the country, a lawnmower accident and a child or a teenager loses a toe. You may not know anything about lawnmower design. You may not know anything about your State's Product Liability Act or ANSI standards or the litany of duty breach causation and damages, but you do know that you used to have ten toes and now you have nine. There is no equivalent here. The 16B plaintiff does not know insider trading has occurred and won't know unless he or she is told. They do not know someone else somewhere has nine toes. As far as they know, everybody still has all of their toes. No other statute of limitations will serve as an analog here because of the unique character of 16B. The plaintiff has no injury and recovers no damages. We don't believe we can fairly look at other statutes of limitation as a model given that distinction. The Reliance Electric Court concluded if you have a choice, you should select that interpretation that best serves the goal of curbing short swing trading by insider. We believe the case before the Court can and should be determined based on the wording of 16B itself. The limitations period in B applies to those who file the form in A. But if the Court believes that the textual analysis is less clear than we think, the Ninth Circuit should be affirmed based on the interpretive principles of Reliance Electric nonetheless. If there are no other questions, I'll sit down. Thank you, Mr. Tilden. Mr. Landau, you have four minutes. Thank you, Your Honor. Very briefly, just on repose, two quick points. If there is any one theme that runs through this Court's 16B jurisprudence, it's that precisely because the section 16B is prophylactic, it should be interpreted in a literal and mechanical way. I think the — that argues for repose because you don't get into a lot of these questions about who knew what when. And so that certainly would be consistent with — this case would fit well within that — that tradition if you were to go that way. In addition on repose, let's not forget that Congress gave two years after the date the profits were realized. If those profits were in a report, you wouldn't need the whole two years anyway. In fact, for the fraud provision, you only get one year after you discover it. So in a sense, I think that helps show that even in a repose approach, two years is plenty of time. Then — but assuming that you go with equitable tolling, I think I'd like to emphasize that there's really four approaches that have been brought forth. There's the Ninth Circuit's rigid approach that it's — they call it equitable tolling because there's nothing equitable about it. It's — it's — we don't care about who knew what when or anything. It is — you have to file the 16a. The district court actually struggled because the district court in this case said I'm supposed to be doing something called equitable tolling, and there's nothing equitable here at all because I think everything here was plainly known to the — to the plaintiffs or should have been known. Then you have the Litzler approach, which looks to actual knowledge. And I think, as some of the questioning brought out, there is no background rule that distinguishes between actual knowledge and constructive knowledge for purposes of equitable tolling. Again, I think as some of the questions brought out, equitable tolling, because it's an equitable doctrine, looks to has the defendant behaved equitably and has the plaintiff behaved equitably. And we agree with the government that diligence, in other words, would a reasonable shareholder — did a shareholder know or would a reasonable shareholder should have known, is a critical part of the inquiry that's missing in — in the Ninth Circuit's analysis. Where we disagree with the government is with respect to their — their view of fraudulent concealment to involve any violation, any alleged violation of a statutory 16a duty. Under the government's view, it would be considered fraudulent concealment and would give rise to tolling if somebody were to come in today and said, gee, the Microsoft IPO back in 1986, there was actually a group in there, the underwriters conspired. And, you know, the thing is, the difference between this case and that one is this case happens to have involved this hugely prominent IPO litigation that really brought all these things to light. But the defendant in that Microsoft hypothetical would not have the advantage of being able to point to the defendant's — the plaintiff's lack of diligence, saying this is all out there. So you'd be creating a regime, if you go with the government's approach, that really waters down the defendant's culpability on the fraudulent concealment side of equitable tolling. Essentially, they're asking you to take the fraud out of fraudulent concealment. The only last point I'd like to make is that, with respect to the specific facts here again, counsel said today that this was not known until a Harvard symposium in 2009. I would urge you again to look at their briefing below. Their — docket 58 in the district court responds to our motion to dismiss by citing a 2004 article that they actually included in the Joint Appendix. You can look at Joint Appendix 80 to 83. Their theory of underwriter conspiracy with issuer insiders is set forth right there on those pages of that 2004 article, well before the two years. And again, in addition, the 2000 — their complaint, which talks about lockup, you can look specifically at Joint Appendix 59 to 61 to see how lockup was alleged to be a critical part of their underlying theory. Finally, it is not true, again, that the IPO litigation was only about underwriters. There were individual issuer defendants at issue in the IPO litigation. And, in fact, Judge Shindlin's opinion goes into some detail about the — the alleged conspiracy that they're saying — the alleged group that they're saying they couldn't have found out. In fact, she says this is pages 356 and 358 of the Judge Shindlin opinion will provide that their theory was very well known. Thank you. Thank you, Mr. Panetta. The case is submitted.